**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2379-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CHARLES CARTER, JR.,

    Defendant-Appellant.

_____

Submitted May 23, 2018 — Decided June 14, 2018

Before Judges Manahan and Suter.

On appeal from Superior Court of New Jersey,
Law Division, Union County, Indictment No.
10-01-0004.

Joseph E. Krakora, Public Defender, attorney
for appellant (Andrew P. Slowinski, Designated
Counsel, on the brief).

Ann M. Luvera, Acting Union County Prosecutor,
attorney for respondent (Alexandra L. Pecora,
Special Deputy Attorney General/Acting
Assistant Prosecutor, of counsel and on the
brief).

PER CURIAM

    Defendant Charles Carter, Jr., appeals from the denial of his

petition for post-conviction relief (PCR) without an evidentiary

hearing based on a claim of ineffective assistance of appellate counsel. We affirm.

On January 5, 2010, a Union County grand jury charged defendant with: first-degree armed robbery, N.J.S.A. 2C:15-1 (count one); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count two); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7) (count three); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (counts four and six); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-4(d) (count five); fourth-degree obstruction of law or other governmental function, N.J.S.A. 2C:29-1 (count eight); and, third-degree resisting arrest, N.J.S.A. 2C:29-2(a) (count nine).

The court conducted a <u>Wade</u>[1] hearing, beginning on June 15, 2011, and continuing on October 14, 2011. At the October continuation, the court denied defendant's motion to suppress out-of-court identifications by the liquor store owners, Hemlata and Arvind Patel. On January 4, 2012, defendant moved to re-open the <u>Wade</u> issue based on newly received discovery that Hemlata saw defendant as he was being loaded into the ambulance before being shown the photo array. The court heard additional testimony and

_____

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

argument on January 10, 2012, and again ruled the out-of-court identifications admissible.

Defendant was tried before a jury on January 4, 5, 10, 11, 12, and 13, 2012. The court dismissed count seven on January 11, 2012. Two days later, the jury found defendant guilty of all remaining charges. At his sentencing hearing on April 13, 2012, the court found three aggravating factors and no mitigating factors applicable to the sentence. The court merged counts two through five with count one, and sentenced defendant to sixteen years in prison, subject to the No Early Release Act (NERA) N.J.S.A. 2C:43-7.2. On counts six, eight and nine, the court sentenced defendant to two terms of twelve months and one term of four years, respectively, to be served concurrently with one another, but consecutively to count one. The aggregate sentence was twenty years in prison, sixteen of which were subject to the eighty-five percent parole disqualifier of NERA. Defendant appealed his conviction, and we affirmed. State v. Carter, No. A-5147-11 (App. Div. July 15, 2014) (slip op. at 2-8), certif. denied, 220 N.J. 208 (2014).

We derive the salient facts from our prior opinion:

> On July 23, 2009, a man came into Aarti's World Discount Liquors on Highway 22 in Union, displayed a knife, and demanded money. One of the owners of the liquor store, Hemlata Patel, testified that about fifteen minutes

before the robbery, the same man entered the store and remained for about five to seven minutes. She recalled that she had seen the same man earlier that morning in the parking lot of the motel across the highway. The man approached the counter, stood two or three feet away, and asked for lottery tickets. After a conversation of a few minutes, the man started walking toward the back of the store. Hemlata asked the man to pay for the tickets, but he gestured, indicating that he forgot his wallet and was going to get it.

Fifteen minutes later, the man returned. Upon entering the store, he jumped on the counter and said "give me the money." He was holding a knife and a white towel. Hemlata attempted to separate herself from him by putting a small table between them, but the man knocked her over. She identified defendant as the man who had come into the store, demanded money, and threatened her with a knife.

The other owner of the store, Arvind Patel, had been sitting behind a shelving unit. He pushed the panic button to summon the police and came to his wife's aid. He struggled with defendant. Defendant jumped back on the counter, slashed Arvind's arm with the knife, and ran out of the store.

Police Officers Juan Vargas and Scott Heath arrived and found Arvind in the doorway with a towel wrapped around his forearm. The officers saw the store was in disarray and there was blood in the entryway, on the counter, and on the sides of the counter. Officer Vargas examined Arvind's wound, and later described it as a couple of inches deep and six to eight inches long.

Detective Donald Cook of the Union County Police Identification Bureau arrived at the scene and took the white towel and placed it

4

in a bag for DNA analysis. He took a number of photographs of the scene. He also dusted the counter for fingerprints, but did not obtain usable prints.

Five days later, on July 28, 2009, Detective Christopher Baird saw defendant in the parking lot of the liquor store. Baird recognized defendant as a man he had seen walking on the bridge over Route 22 towards the liquor store on the date of the robbery. Defendant was carrying a red utility knife when Detective Baird saw him on July 28. Baird and his partner ordered defendant to stop, but defendant ran. The officers chased him through the parking lot, across Route 22, and to the Garden State Motor Lodge.

When the officers cornered defendant, he had his feet tangled in a fence. Defendant sliced his own throat three times with the utility knife. The officers, and other police who had arrived, ordered defendant to give the knife to one of the officers. Defendant eventually complied, and the officers attended to his wounds and took him to a hospital.

At the hospital, Officer Heath read defendant Miranda[2] warnings. Defendant was lying on a gurney and seemed lucid and not under the influence of any drugs or medication. The officer did not question defendant at that time. One or two minutes later, defendant initiated a conversation and asked Officer Vargas to do him a favor. He asked the officer to apologize to several of his family members and to tell the owners of the liquor store that he was sorry, that he did not mean to hurt them, and that he just wanted the money. Vargas inquired what robbery defendant was referring to and whether he had a weapon. Defendant answered that he was referring to the liquor store across the

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

highway from the motel and that he had used the same knife he was holding when arrested.

On the day of defendant's arrest, Hemlata Patel saw him from across the highway as he was being placed in an ambulance. She knew he was the robber. Two days later, Hemlata and Arvind Patel were shown photo arrays separately, and both identified defendant as the robber. The arrays were shown by Detective George Moutis, who was not involved in the investigation and did not know which photograph was the suspect in the robbery. Hemlata and Arvind also identified defendant as the robber while they testified at the trial.

In addition to the victims and police witnesses, the State presented testimony at trial from Margaret Cuthbert, who was qualified as an expert in forensic DNA analysis. Cuthbert tested two stains from the white towel that was recovered from the scene of the robbery. She concluded that Arvind was likely the source of a red-brown blood stain, and that defendant was likely the source of a yellow stain.

Defendant presented testimony of his father Charles Carter, Sr., regarding a police detective conveying an apology from defendant; his sister Theresa Counts regarding his physical appearance at the time in comparison to the victims' descriptions of the robber; Detective Cook regarding a shoeprint at the scene of the robbery; and his own testimony denying involvement in the robbery. Defendant testified he had never been to the store. He also denied running from the police on July 28, 2009. Defendant said he was sitting next to the fenced area where he was arrested when the police found him. According to defendant, he had just purchased a box cutter and was going to use it to take his own life, but not because he committed the robbery. He also

A-2379-16T2

denied making any statement or confession to the police at the hospital.

[Id. at 2-8.]

Defendant filed his petition for PCR on December 14, 2015. After hearing arguments, Judge John M. Deitch denied defendant's petition without an evidentiary hearing on October 27, 2016. This appeal followed.

On appeal, defendant raises the following points:

POINT I

THE PCR COURT SHOULD HAVE HELD THAT DEFENDANT'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED BY APPELLATE COUNSEL'S FAILURE TO ARGUE THE VICTIM'S IDENTIFICATION OF DEFENDANT WAS IRREVOCABLY TAINTED BY A SUGGESTIVE PHOTO ARRAY. (U.S. CONST. AMEND. VI; N.J. CONST. ART. I, ¶ 10).

POINT II

APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO ARGUE THAT THE STATE WAS IMPROPERLY PERMITTED TO INTRODUCE FALSE IDENTIFICATION TESTIMONY BY THE VICTIM'S DAUGHTER, EVEN THOUGH SHE HAD NOT BEEN PRESENT DURING THE ROBBERY.

POINT III

APPELLATE COUNSEL PROVIDED INEFFECTIVE ASSISTANCE BY FAILING TO ARGUE THAT DEFENDANT'S RIGHT TO A FAIR TRIAL WAS PREJUDICED BY THE STATE'S FAILURE TO NOTIFY DEFENDANT OF THE VICTIM'S HEARING IMPAIRMENT BEFORE HIS TESTIMONY.

## POINT IV

DEFENDANT'S PETITION FOR PCR IS NOT PROCEDURALLY BARRED [RULE] 3:22-4 OR [RULE] 3:22-5.

We have considered these arguments in light of the record and controlling law. We affirm substantially for the reasons set forth in the comprehensive, well-reasoned written opinion of Judge Deitch. We add only the following.

We review the denial of a PCR petition without an evidentiary hearing for abuse of discretion. State v. Peoples, 446 N.J. Super. 245, 255 (App. Div. 2016) (citing State v. Preciose, 129 N.J. 451, 462 (1992)). Our review contains consideration of mixed questions of law and fact. State v. Harris, 181 N.J. 391, 415-16 (2004). We defer to a PCR court's factual findings and will uphold those findings that are "supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). However, a PCR court's interpretations of law are provided no deference and are reviewed de novo. Id. at 540-41.

The judge held that defendant's claims were barred per Rule 3:22-4 or Rule 3:22-5 as substantially similar to the issues previously raised on appeal in State v. Carter, No. A-5147-11 (App. Div. July 15, 2014). "[A] prior adjudication on the merits ordinarily constitutes a procedural bar to the reassertion of the same ground as a basis for post-conviction review." Preciose, 129

N.J. at 476 (citing R. 3:22-12). Additionally, a defendant is precluded from raising an issue on PCR that could have been raised on direct appeal. State v. McQuaid, 147 N.J. 464, 483 (1997). As explained by the Court in McQuaid:

> A defendant ordinarily must pursue relief by direct appeal, see R. 3:22-3, and may not use post-conviction relief to assert a new claim that could have been raised on direct appeal. See R. 3:22-4. Additionally, a defendant may not use a petition for post-conviction relief as an opportunity to relitigate a claim already decided on the merits. See R. 3:22-5.
>
> [Ibid.]

The application of these standards requires the "[p]reclusion of consideration of an argument presented in post-conviction relief proceedings . . . if the issue raised is identical or substantially equivalent to that adjudicated previously on direct appeal." State v. Marshall, 173 N.J. 343, 351 (2002) (quoting State v. Marshall, 148 N.J. 89, 150 (1997)). A PCR claim is based upon the "same ground" as a claim already raised by direct appeal when "'the issue is identical or substantially equivalent' to [the] issue previously adjudicated on its merits." McQuaid, 147 N.J. at 484 (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)). However, a procedural rule otherwise barring post-conviction relief may be overlooked to avoid a fundamental injustice where the deficient representation of counsel affected

"a determination of guilt or otherwise wrought a miscarriage of justice." Nash, 212 N.J. at 546 (quoting State v. Mitchell, 126 N.J. 565, 587 (1992)).

As the judge noted, defendant raised issues in his PCR regarding the photo array and defendant's movements in the courtroom that we addressed on direct appeal. Carter, slip op. at 13-14, 19-21. As such, those claims are barred from our consideration. R. 3:22-5; McQuaid, 147 N.J. at 484; Preciose, 129 N.J. at 476.

Although we discern no error in the judge's determination that defendant's petition was procedurally barred, we briefly discuss defendant's claims of ineffective assistance of appellate counsel.

Defendant argues he received ineffective assistance of appellate counsel based on the failure of counsel to raise the issues that: the witnesses' identification processes were unduly suggestive, a witness's false identification violated his right to a fair trial, and he should have been notified of a witness's hearing problem. In reaching his determination, the judge held defendant failed to provide any facts in support of his argument that appellate counsel's actions fell below an objective standard of reasonable conduct. Further, the judge held defendant failed to provide any evidence of prejudice. As such, the judge held

defendant did not meet his burden to establish the first and second prongs of <u>Strickland</u>/<u>Fritz</u>.[3] We agree.

"Post-conviction relief is New Jersey's analogue to the federal writ of habeas corpus." <u>Preciose</u>, 129 N.J. at 459. Under <u>Rule</u> 3:22-2(a), a criminal defendant is entitled to post-conviction relief if there was a "[s]ubstantial denial in the conviction proceedings of defendant's rights under the Constitution of the United States or the Constitution or laws of the State of New Jersey[.]"  "A petitioner must establish the right to such relief by a preponderance of the credible evidence." <u>Preciose</u>, 129 N.J. at 459 (citations omitted).  "To sustain that burden, specific facts" that "provide the court with an adequate basis on which to rest its decision" must be articulated. <u>Mitchell</u>, 126 N.J. at 579.

Claims of constitutionally ineffective assistance of counsel are well suited for post-conviction review. <u>See</u> <u>R.</u> 3:22-4(a)(2); <u>Preciose</u>, 129 N.J. at 460.  In determining whether a defendant is entitled to relief on the basis of ineffective assistance of counsel, New Jersey courts apply the two-prong test articulated by the United States Supreme Court in <u>Strickland</u>, 466 U.S. at 687,

---

[3] <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>State v. Fritz</u>, 105 N.J. 42 (1987).

and <u>United States v. Cronic</u>, 466 U.S. 648, 658-60 (1984). <u>Preciose</u>, 129 N.J. at 463; <u>see</u> <u>Fritz</u>, 105 N.J. at 49-50.

Under the first prong of the <u>Strickland</u> test, a "defendant must show that [defense] counsel's performance was deficient." 466 U.S. at 687. Under the second prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.

Although defendant is entitled to the effective assistance of appellate counsel, "appellate counsel does not have a constitutional duty to raise every non[-]frivolous issue requested by the defendant." <u>State v. Morrison</u>, 215 N.J. Super. 540, 549 (App. Div. 1987) (citing <u>Jones v. Barnes</u>, 463 U.S. 745, 754 (1983)); <u>see also</u> <u>State v. Gaither</u>, 396 N.J. Super. 508, 516 (App. Div. 2007) (holding that appellate counsel is not "required to advance every claim insisted upon by a client on appeal.").

Upon consideration of the record, we conclude that defendant has failed to demonstrate that appellate counsel's representation "fell below an objective standard of reasonableness," <u>Strickland</u>, 466 U.S. at 687-88, and that but for appellate counsel's failure to raise that argument on direct appeal the outcome of his appeal of his conviction would have been different. <u>State v. Allegro</u>, 193 N.J. 352, 367 (2008). Because defendant failed to establish

both prongs of the <u>Strickland</u> standard, the PCR court properly rejected defendant's claim that his appellate counsel was constitutionally ineffective. See <u>Strickland</u>, 466 U.S. at 700.

Finally, we reject defendant's argument that the court erred in denying his petition without an evidentiary hearing. An evidentiary hearing is required where the defendant has shown a prima facie case and the facts on which he relies are not already of record. Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 2 on <u>R.</u> 3:22-10 (2018). The mere raising of a claim for PCR does not entitle defendant to an evidentiary hearing. <u>State v. Cummings</u>, 321 N.J. Super. 154, 170 (App. Div. 1999). As defendant failed to establish a prima facie case of ineffective assistance of counsel, no evidentiary hearing was required.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13